**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5706

ALBERT SHAW NELSON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Orangeburg.
Charles E. Simons, Jr., Senior District Court Judge.
(CR-95-333)

Argued: April 1, 1996

Decided: August 14, 1996

Before RUSSELL, WIDENER, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** W. Gaston Fairey, FAIREY, PARISE & MILLS, P.A.,
Columbia, South Carolina, for Appellant. Marvin Jennings Caugh-
man, Assistant United States Attorney, Columbia, South Carolina, for
Appellee. **ON BRIEF:** Margaret B. Seymour, United States Attorney,
Columbia, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this interlocutory appeal, Albert Shaw Nelson, invoking the Double Jeopardy Clause of the Fifth Amendment, seeks to dismiss a pending federal indictment against him in the United States District Court for the District of South Carolina, Columbia Division, for conspiracy to distribute cocaine, crack cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846; conspiracy to launder drug proceeds in violation of 18 U.S.C. § 371; and maintaining a continuing criminal enterprise in violation of 21 U.S.C. § 848. Nelson also seeks to bar the Government from proceeding on a forfeiture action pursuant to 21 U.S.C. §§ 848 and 853 for the above violations. Nelson contends (1) that a previous federal conviction for drug conspiracy in Savannah, Georgia, bars the present federal indictment in South Carolina because both involved the same conduct, and (2) that a prior forfeiture of three pieces of his real property constitutes a double jeopardy bar to the current indictment. Finding that Nelson had not previously been placed in jeopardy either by having pled guilty to the Savannah conspiracy, or by the previous forfeiture, we affirm the district court's denial of Nelson's motion to dismiss based on double jeopardy.

I.

In October 1989, a federal indictment in Savannah, Georgia (hereinafter, the "Savannah indictment"), named Nelson as an "assistant" to the principal supplier of a Savannah drug trafficking ring headed by Byron Thompson. Following Nelson's arrest in March 1990, he began providing information to federal authorities regarding his involvement with the Savannah ring.

The organization, centered in Miami, Florida, was responsible for delivering over 500 grams of cocaine to Savannah and other counties

2

in Georgia. The primary actors supplying the Savannah ring were Nelson and Yves Pierre ("Pierre") in Florida, and Byron Thompson was the principal distributor in Savannah. Richard Williams acted as courier for Nelson and Pierre, delivering cocaine to Thompson and returning the proceeds to them in Florida. Nelson portrayed himself as a mere conduit for collecting and receiving the proceeds from the distribution of drugs in and around Savannah.

The Savannah indictment specifically focused on Nelson's assisting Pierre in supplying drugs to Thompson in Savannah during the years 1984 to 1989. In May 1992, Nelson pled guilty to the conspiracy count in the Savannah indictment and was incarcerated for 58 months with five years supervised release. Pursuant to a negotiated settlement and criminal forfeiture action as part of the Savannah prosecution, Nelson forfeited three pieces of real property in South Florida. Nelson was released in 1994 and was serving supervised release when the 1995 federal indictment in South Carolina issued.

Subsequent government drug interdiction investigations uncovered that Nelson played a greater role in drug trafficking than he had revealed to the Savannah authorities. Apparently, Nelson had failed to disclose his involvement with additional drug trafficking rings in areas other than those covered by the Savannah indictment. As it turns out, Nelson was a sophisticated supplier who oversaw drug manufacturing, distribution, and sales operations in Florida, Georgia, Pennsylvania, and South Carolina. Further federal grand jury testimony in South Carolina enabled the government to name Nelson as a "kingpin" of the organization. Nelson was the principal supplier of Elmore Moncrieft who operated a drug trafficking ring in South Carolina. The government also contends that following his Savannah conviction, Nelson continued to manage drug transactions from his jail cell in Georgia.

In May 1995, a grand jury in the United States District Court for the District of South Carolina, Columbia Division, (hereinafter, the "South Carolina indictment") indicted Nelson, Moncrieft, and others with one count of conspiracy to distribute cocaine, crack cocaine and marijuana, and with one count of conspiracy to launder drug proceeds. A third superseding indictment also charged Nelson with a continuing criminal enterprise ("CCE") count and sought forfeiture of

3

the assets gained from his drug sales. This federal indictment covered activities occurring in South Carolina between 1988 and 1995. During this time, Nelson allegedly provided his co-conspirators with 138 kilograms of cocaine and received payment of approximately two million dollars.

Nelson moved to dismiss the South Carolina indictment on double jeopardy grounds. The district court issued a written order denying the motions. Nelson brought this interlocutory appeal.

II.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The Clause protects against three distinct abuses: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989). Nelson claims the district court erred in denying his motion to dismiss the South Carolina indictment under the Double Jeopardy Clause for two reasons. First, he contends that his previous drug conspiracy conviction in Savannah bars the present prosecution for conspiracy in South Carolina because he was involved in but one conspiracy. Thus, he argues that he is facing a second prosecution for the same offense. Second, Nelson contends that the court-ordered forfeiture of three pieces of his real property as part of the previous Savannah prosecution bars the Government from now prosecuting him for the present underlying crimes, or for any similar acts committed in South Carolina.

When determining whether a defendant is being placed in jeopardy a second time following a prior conviction or prosecution, the factual determinations of the district court are reviewed under a clearly erroneous standard, United States v. Lurz, 666 F.2d 69, 74 (4th Cir. 1981), cert. denied, 459 U.S. 843 (1982); and its legal conclusions are reviewed de novo, United States v. McHan , 966 F.2d 134, 138 (4th Cir. 1992).

A.

Nelson first contends that his prior conspiracy conviction in Savannah bars the Government from prosecuting him under the South Caro-

4

lina indictment. Both the Savannah and South Carolina indictments charge the offense of conspiracy to distribute cocaine. Nelson asserts that he was involved in a single continuous conspiracy that encompassed all of his drug trafficking activities along the eastern seaboard. He argues that he was tried and convicted for this drug conspiracy in Savannah, and that the pending South Carolina indictment constitutes a second prosecution for the same offense. We must determine therefore, whether the successive conspiracy counts charge the "same offense" within the meaning of the Double Jeopardy Clause.

This court evaluates double jeopardy claims regarding successive conspiracy counts pursuant to the following five-part totality of the circumstances test:

> (1) the time periods in which the conspiracies are alleged to have occurred;
>
> (2) the places in which the conspiracies are alleged to have occurred;
>
> (3) the persons allegedly acting as co-conspirators;
>
> (4) the substantive statutes alleged to have been violated;
>
> (5) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the conspiracies charged which indicate their nature and scope.

United States v. MacDougall, 790 F.2d 1135, 1144 (4th Cir. 1986). The district court followed this test and concluded that Nelson was involved in separate and distinct conspiracies. Nelson maintains the district court misapplied the MacDougall factors because the South Carolina indictment charges crimes that were a sub-part of his overall scheme to distribute cocaine to multiple locations throughout the southeast.

Nelson argues that the overlapping time periods of the two alleged conspiracies coupled with his using the same courier (Williams) to deliver cocaine and crack cocaine from the same source city--Miami

5

--supports his single conspiracy theory. Nelson's cursory presentation of the Savannah conspiracy and the alleged South Carolina conspiracy as a single continuous conspiracy is misleading because the South Carolina conspiracy fails to encompass the entirety of the Savannah conspiracy, and the South Carolina indictment does not charge Nelson a second time for identical criminal conduct. Thus, for the reasons that follow we conclude Nelson was involved in separate conspiracies to violate the narcotics laws.

The Savannah indictment establishes that the Savannah conspiracy began no later than March 1, 1984, and lasted until and including September 26, 1989. Conversely, the South Carolina indictment charges the South Carolina conspiracy began in "at least" 1988 and continued until September 19, 1995. The South Carolina conspiracy began approximately four years after the beginning of the Savannah conspiracy and ended almost six years later. For the most part, the conspiracies occurred over distinct and identifiable time periods.

The fact that the two conspiracies temporarily overlap during 1988 and 1989 is insignificant. The South Carolina indictment charges Nelson with six overt acts of receiving approximately $664,000 in drug proceeds from drug distributions in South Carolina during the months of March, May, June, and September 1988, and in May and June of 1989. Nelson, however, was not charged with participating in any overt acts in Savannah in 1988. And the one substantive act constituting his participation in the Savannah conspiracy to which he did plead guilty occurred on August 9, 1989. Thus, the dates of the overt acts attest to the fact that Nelson participated in the Savannah and South Carolina conspiracies at specifically identifiable and distinct times.

The locations in which each conspiracy occurred also differ. The Savannah indictment identified Nelson as having engaged in drug trafficking activities "in Chatham County within the Southern District of Georgia, Fulton, Clayton and Dekalb Counties within the Northern District of Georgia, the Southern District of Florida, and elsewhere . . . ." Joint Appendix at 16. The pending South Carolina indictment, on the other hand, charges Nelson with conspiring to ship drugs and money into and out of Bamberg, Barnwell, and Orangeburg Counties, South Carolina. The South Carolina indictment charges no conduct in

6

Savannah. Thus, the locations in which each conspiracy occurred are geographically distinct.

Nonetheless Nelson contends that the phrase "and elsewhere" in the Savannah indictment encompassed his alleged criminal acts in South Carolina. We disagree. The phrase is a term of construction used frequently in indictments. Its use in the Savannah indictment accounted for and referenced all conduct known and unknown to the Government specifically relating to the Savannah conspiracy. The phrase "and elsewhere" does not serve to contemplate all of Nelson's alleged past and future criminal activity in South Carolina.

As to named co-conspirators, the persons identified in the South Carolina conspiracy are persons not even named in the Savannah conspiracy. Nelson's name is the only one to appear in both indictments.

Nonetheless, Nelson argues that he used the same courier, Williams, to deliver cocaine to his Savannah and South Carolina distributors. Despite the fact that the same courier occasionally facilitated drug transactions and collected drug money in both Savannah and South Carolina on the same route, the individuals with whom the courier dealt--the principals, the substantive players, the contacts and the buyers--were different in each state and changed over the time periods. The mere use of the same courier to deliver drugs to completely different persons on the same trip along the eastern seaboard does not manifest one conspiracy.

The separateness of the conspiracies is underscored further by the fact that the substantive statutes alleged to have been violated in South Carolina differ from those to which Nelson pled guilty in Savannah. In South Carolina, Nelson is charged with money laundering in addition to the conspiracy charge and conspiring to possess and to distribute marijuana, cocaine and cocaine base. In Savannah, Nelson was charged with only conspiring to distribute cocaine and cocaine base. He was not charged with money laundering. Additionally, none of the co-defendants' substantive offenses as charged in the Savannah indictment are related to, or identical to those with which Nelson is charged in South Carolina.

Finally, in Savannah, Nelson's overt act consisted of a phone call he made to Thompson to discuss payment of a cocaine shipment. In

7

South Carolina, Nelson is alleged to have received approximately $2,000,000 for providing his South Carolina distributors with 138 kilograms of cocaine between the years 1988 and 1995. None of the specific deliveries constituting the 138 kilograms sold in South Carolina nor the money collected from those sales was referenced in the Savannah indictment.

By comparing evidence from Nelson's Savannah conviction with grand jury testimony from the pending case, and by following MacDougall, it is apparent that there were two separate agreements among distinct groups of participants to commit separate and independent violations of the narcotics laws. The alleged similarities, which Nelson cites, do not affirmatively constitute a sufficient overlapping of key actors, methods, and goals. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). Therefore, it was not clear error for the district court to have found that Nelson participated in multiple conspiracies and that the pending South Carolina conspiracy charge is a different conspiracy offense than that to which Nelson pled guilty in 1992.

B.

Nelson next contends that when he forfeited his three parcels of real property as part of the Savannah prosecution, he forfeited all assets and proceeds resulting from all of his drug activities from 1984 until November 1992, when the forfeiture was initiated. Thus, Nelson argues that double jeopardy bars the South Carolina indictment because the Savannah forfeiture constitutes a punishment for all drug trafficking that occurred prior to November 1992, a period that includes the present indictment. We disagree.

In Savannah, Nelson pled guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. As part of the Savannah prosecution, the government initiated a criminal forfeiture action against Nelson pursuant to 21 U.S.C. § 853(a)(1). Under § 853(a)(1), the government can initiate forfeiture proceedings against "any person convicted of a [drug violation] punishable by imprisonment for more than one year . . . ." The government can seek forfeiture only of pro-

8

ceeds, which includes "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly."*

The Preliminary Order of Forfeiture, filed December 17, 1992 identified Nelson's property as "proceeds derived directly or indirectly from the unlawful drug activities charged in Count I of the [Savannah] indictment." Count I identified Nelson as having engaged in unlawful drug activities between March 1, 1984, and September 26, 1989. Count I also identified the primary places of activity as having occurred "in Chatham County within the Southern District of Georgia, Fulton, Clayton, and Dekalb Counties within the Northern District of Georgia, the Southern District of Florida and elsewhere . . . ." Joint Appendix at 16. The Consent Decree for Forfeiture, which Nelson signed on November 23, 1992, identified the properties Nelson forfeited as those:

> properties constituting or derived from the proceeds which [Nelson] obtained directly or indirectly as a result of his intentional and unlawful conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of cocaine and five grams of cocaine base in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Joint Appendix at 101. Irrespective of the issuing date of the forfeiture, the Preliminary Order of Forfeiture and the Consent Decree for Forfeiture, taken together, support our conclusion that the forfeiture was properly initiated under § 853(a)(1) in response only to that criminal conduct in which Nelson participated in Savannah between 1984 and 1989. We also conclude that the term "and elsewhere" as used in Count I of the Savannah indictment did not contemplate Nelson's

---

*Section 853(a)(1) reads:

> (a) Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law--

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violations . . . .

9

drug activities in South Carolina during the period 1989 to 1992 with respect to the criminal forfeiture.

Because the government secured the 1992 Savannah forfeiture in response to Nelson's criminal conduct in Savannah, and because the Savannah conspiracy involved conduct different from that alleged in the South Carolina indictment, Nelson's right against double jeopardy has not been violated by the instant South Carolina indictment.

III.

For the foregoing reasons the decision and order of the district court denying Nelson's motion to dismiss is

AFFIRMED.